IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MARYLAND

_____ FILED_____ ENTERED
_____ LOGGED_____ RECEIVED

OCT 8 2025

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | | |
| APPLE IPHONE 15 PRO MAX, SERIAL NUMBER L3DG2DQKM9, | Case No. | 8:25-mj-02100-TJS |
| APPLE IPHONE 17, SERIAL NUMBER G6LF42LVY6, | Case No. | 8:25-mj-02101-TJS |
| SILVER/BLACK SAMSUNG GALAXY S25 ULTRA, IMEI 354474492515019 | Case No. | 8:25-mj-02102-TJS |
| BLACK SAMSUNG GALAXY A20, IMEI 352741119567876 | Case No. | 8:25-mj-02103-TJS |
| BLUE MOTOROLA MILAN 5G22 XT2215-4, IMEI 351475461223462 | Case No. | 8:25-mj-02106-TJS |
| CURRENTLY LOCATED AT THE USSS BALTIMORE FIELD OFFICE, BALTIMORE, MARYLAND / USSS HEADQUARTERS, WASHINGTON D.C. | | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Special Agent Christopher McMahon, with the United States Secret Service ("USSS"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for search warrants pursuant to the Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1(A). The property to be searched includes five (5) cellular phones, hereinafter referred to as the "**TARGET DEVICES**." Further described in attachments A-1 through A-5. These warrants would authorize the

examination of property—five electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. Specifically, the property to be searched includes:

    I.    An iPhone 15 Pro Max, SN: L3DG2DQKM9 ("**TARGET DEVICE 1**")

    II.    An iPhone 17, SN: G6LF42LVY6 ("**TARGET DEVICE 2**")

    III.    A Silve/Black Samsung Galaxy S25 Ultra, IMEI: 54474492515019 ("**TARGET DEVICE 3**")

    IV.    A Black Samsung Galaxy A20, IMEI: 352741119567876 ("**TARGET DEVICE 4**")

    V.    A Blue Motorola Mila 5G22 XT2215-4, IMEI: 351475461223462 ("**TARGET DEVICE 5**")

2.    The **TARGET DEVICES** are currently in storage at the USSS Baltimore Field Office in Baltimore, Maryland (**TARGET DEVICES 1 and 2**) and USSS Headquarters, Criminal Investigative Division (CID) in Washington, DC (**TARGET DEVICES 3, 4, and 5**). The **TARGET DEVICES** have been stored in a manner such that its contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of the USSS.

3.    As described below, there is probable cause to believe that the **TARGET DEVICES**, described in Attachments A-1 through A-5, contain fruits, evidence, and/or instrumentalities of violations of federal law, specifically 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering (the "**TARGET OFFENSE**").

4.    I have been employed as a Special Agent ("SA") with the United States Secret Service since May 2014. I have completed the Criminal Investigator Training Program at the

Federal Law Enforcement Training Center as well as the Special Agent Training Course at the USSS James J. Rowley Training Center. These programs provided training regarding counterfeit currency, financial crimes, electronic crimes, fraud, and criminal investigations. I have completed advanced cyber training to include the Network Intrusion Program. I was previously assigned to the New York Field Office, Electronic Cyber Task Force where I conducted money laundering and cyber investigations. Since being employed with the USSS, I have participated in the execution of numerous search warrants, including those for online accounts, such as email accounts, online storage accounts, and other online communication accounts. I am currently assigned to the USSS Headquarters, Criminal Investigative Division, Global Investigative Operations Center. Prior to joining the USSS, I worked as a Police Officer for the Prince George's County Police Department from November 2012 to May 2014.

5.      The facts in this affidavit come from my personal observations and knowledge, my training and experience, my review of documents and other evidence, information obtained from other Federal Agents, state and local law enforcement officers, witnesses, and other public and private entities. Observations referenced in this affidavit that I did not personally make were relayed to me by the person or persons who made such observations, or in reports that detailed the events described. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. I have set forth only those facts believed are necessary to establish probable cause. I have not, however, intentionally excluded any information known to me that I believe would defeat a determination of probable cause.

6.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that the **TARGET OFFENSE** has been

committed by Kenny Skipwith (**"SKIPWITH"**), Stepfanie Malone (**"MALONE"**), Christopher

Allen-Teague (**"TEAGUE"**), Andre Malone (**"A MALONE"**), Deonta Skipwith (**"D**

**SKIPWITH"**), and Trinetta Ashcraft (**"ASHCRAFT"**), collectively known as the **Defendants**.

7.      I also submit there is probable cause to believe that fruits, evidence, and/or

instrumentalities of these **TARGET OFFENSE** are presently located on the **TARGET**

**DEVICES** as described in Attachment A-1 through A-5, when searching the electronically stored

data described in Attachment B.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

8.      **TARGET DEVICE 1** is an Apple iPhone 15 Pro Max, serial number ("SN")

L3DG2DQKM9, that was seized by USSS in the connection with the June 3, 2025, arrest of

SKIPWITH in Laurel, Maryland, for Conspiracy to Commit Money Laundering.

9.      USSS SA Chris McMahon obtained **TARGET DEVICE 1** from **SKIPWITH** on

June 3, 2025, and transported it along with **SKIPWITH** to the Greenbelt Police Station, Greenbelt,

Maryland. After arrest processing at Greenbelt PD, the phone was transported to the Baltimore

Field Office by SA James Edwards, where it was secured temporarily pending entry into evidence.

On or about June 18, 2025, **TARGET DEVICE 1** was secured in the Baltimore Field Office

evidence locker.

10.     **TARGET DEVICE 2** is an Apple iPhone 17, serial number G6LF42LVY6, that

was seized by USSS in the connection with the June 3, 2025, arrest of **MALONE** in Laurel,

Maryland, for Conspiracy to Commit Money Laundering.

11.     USSS SA Scott Bowerman obtained **TARGET DEVICE 2** from MALONE on

June 3, 2025, and transported it along with MALONE to the Greenbelt Police Station, Greenbelt,

4

Maryland. After arrest processing at Greenbelt PD, the phone was transported by SA James

Edwards to the Baltimore Field Office where it was secured temporarily pending entry into

evidence. On or about June 18, 2025, **TARGET DEVICE 2** was secured in the Baltimore Field

Office evidence locker.

    12.    **TARGET DEVICE 3** is a silver/black Samsung Galaxy S25 Ultra, International

Mobile Equipment Identity IMEI ("IMEI") number 354474492515019, that was seized by USSS

in the connection with the June 3, 2025, arrest of **TEAGUE** in Bethesda, Maryland, for

Conspiracy to Commit Money Laundering.

    13.    USSS SA Jayson Bradshaw obtained **TARGET DEVICE 3** from **TEAGUE** on

June 3, 2025, and transported it along with **TEAGUE** to the U.S. District Court, District of

Maryland, Greenbelt, Maryland. After arrest processing, the phone was transported by SA Jennifer

Reid to the Baltimore Field Office where it was secured temporarily pending entry into evidence.

    14.    **TARGET DEVICE 4** is a black Samsung Galaxy A20, IMEI 352741119567876

and **TARGET DEVICE 5,** a blue Motorola Milan 5G22 XT2215-4, IMEI 351475461223462

were seized by USSS in the connection with the June 3, 2025, arrest of **A. MALONE** in

Baltimore, Maryland, for Conspiracy to Commit Money Laundering.

    15.    USSS SA Eder Abad obtained **TARGET DEVICE 4** and **TARGET DEVICE 5**

from **A. MALONE** on June 3, 2025, and transported it along with **A. MALONE** to the U.S.

Federal Courthouse, Greenbelt, Maryland. After arrest processing, **TARGET DEVICE 4** and

**TARGET DEVICE 5** was transported by SA Jennifer Reid to the Baltimore Field Office where it

was secured temporarily pending entry into evidence.

    16.    On June 4, 2025, SA McMahon transported **TARGET DEVICE 3, TARGET**

**DEVICE 4** and, **TARGET DEVICE 5,** to USSS Headquarters, Criminal Investigative Division

(CID), for further investigative and digital forensics actions, pending legal process. Said Devices are held in the CID evidence vault for pending review.

17.     The applied-for warrant would authorize the forensic examination of the Device(s) for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

18.     The **Defendants** were each indicted by a federal grand jury in the District of Maryland on July 18, 2024. That indictment describes the scheme the **Defendants** participated in. The Defendants laundered at least $2.8 million in funds obtained through Business Email Compromise ("BEC") schemes by using false bank accounts the Defendants created to disguise and move the illicit funds, eventually sending them overseas where they could no longer be traced.

19.     As alleged in the indictment, the conspiracy spanned at least April 2022 through the day of the Defendants' arrest on June 3, 2025, when the Defendants were arrested and taken into custody by the USSS and other Federal Agencies and had initial appearances before the Honorable Timothy J. Sullivan, Chief Magistrate Judge of the U.S. District Court for the District of Maryland.

20.     On June 3, 2025, after his arrest but prior to his initial appearance, **SKIPWITH** willingly agreed to participate in a post-arrest interview. **SKIPWITH** was read his Miranda Statement of Rights, then signed a Miranda Waiver and agreed to answer questions from Agents.

21.·    Representatives from the USSS and the Department of Defense, Department of Criminal Investigative Services ("DOD DCIS") were present during the interview. In summary, **SKIPWTH** said he was responsible for getting the **Defendants** and several unindicted co-

6

conspirators involved in the money laundering scheme. He was introduced to **TEAGUE** as another individual who was involved in the conspiracy. He and **TEAGUE** would work together, along with other co-conspirators, to launder funds. **SKIPWITH** would receive information from unindicted co-conspirators via messages on his cell phone about when funds were going to be deposited into certain drop accounts controlled by the **Defendants.**

22.    **SKIPWITH** used several applications (apps) on his phone to communicate and instruct the **Defendants** and other unindicted co-conspirators on how, where, and when to send illicitly obtained funds. **SKIPWITH** claimed to use apps including WhatsApp, Signal, (both end-to-end encrypted communication applications) and Instant Messaging (on his Apple iPhone).

23.    During the interview, **SKIPWITH** unlocked his iPhone, in view of the Special Agents, and displayed chat communications he had received from unindicted co-conspirators (known to this investigation). These chats included information being used to further this money laundering conspiracy. **SKIPWITH** would either copy this information and/or relay this information through encrypted apps to the **Defendants**.

24.    **SKIPWITH** was last in contact with co-conspirators as recent as June 2, 2025, the day prior to his arrest. Said co-conspirators were coordinating further money laundering activities via WhatsApp and Signal.

25.    The **TARGET DEVICES** are currently in the lawful possession of the U.S. Secret Service. They came into the USSS's possession during the arrest of the **Defendants** on June 3, 2025. The phones were all seized with consent; taken during the execution of the arrest warrants. Therefore, while the USSS might already have all necessary authority to examine the **TARGET DEVICES**. I seek this additional warrant out of an abundance of caution to be certain that an

7

examination of the **TARGET DEVICES** will comply with the Fourth Amendment and other applicable laws.

## TECHNICAL TERMS

26.    Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a

8

variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9

27.    Based on my training, experience, and research, I know that the **TARGET DEVICES** have capabilities that allowed them to serve as wireless telephones, digital cameras and GPS navigation devices, with access to the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and evidence related to the commission of the offense under this investigation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time and can usually access the internet. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. Newer smartphones like the **TARGET DEVICES** are capable of being backed up in a variety of ways, such as on local computer systems (i.e. laptops or desktop computers). Smartphones can also be backed-up to remote, Internet-based "cloud" storage accounts, and the contents of the cloud back-up can be automatically or manually downloaded onto new phones (acquired after the original creation of the cloud back-up) and thus can be a source of information as to past events.

29.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of its use, who used it, and when. Based on my training and experience, and knowledge, as well as information relayed to me by Agents and others

10

involved in this investigation, I submit there is probable cause to believe that this forensic evidence may be on the **TARGET DEVICES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who

used it, and when, sometimes it is necessary to establish that a particular thing is

not present on a storage medium.

30.    *Nature of examination.*  Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant.  The examination may require authorities to employ techniques, including but not

limited to computer-assisted scans of the entire medium, that might expose many parts of the

device to human inspection in order to determine whether it is evidence described by the warrant.

31.    *Manner of execution.*  Because this warrant seeks only permission to examine a

device already in law enforcement's possession, the execution of this warrant does not involve the

physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court

to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32.    Based on the foregoing factual information, I submit that this affidavit supports

probable cause for a search warrant authorizing the examination of the **TARGET DEVICES**

described in Attachments A-1 through A-5 to seek the items described in Attachment B.

12

33.    Based on the foregoing, I respectfully request that the Court issue the proposed

search warrant.

Respectfully submitted,

*Christopher McMahon*

Christopher McMahon
Special Agent
United States Secret Service

Subscribed and sworn to before me
on August 19th, 2025:

THE HONRABLE TIMOTHY J. SULLIVAN
UNITED STATES CHIEF MAGISTRATE JUDGE

13

## ATTACHMENT A-1

### Property to be Searched

An Apple iPhone15 PRO MAX, serial number L3DG2DQKM9, located in the evidence locker at the USSS Baltimore Field Office, Baltimore, Maryland (**TARGET DEVICE 1**).

## ATTACHMENT A-2

### Property to be Searched

An Apple iPhone 15 PRO MAX, serial number L3DG2DQKM9, located in the evidence locker at the USSS Baltimore Field Office, Baltimore, Maryland (**TARGET DEVICE 2**).

## ATTACHMENT A-3

### Property to be Searched

A silver/black Samsung Galaxy S25 Ultra, IMEI 354474492515019, located in the evidence locker at the USSS Headquarters, Criminal Investigative Division (CID), Washington, DC (**TARGET DEVICE 3**).

3

## ATTACHMENT A-4

### Property to be Searched

A Black Samsung Galaxy A20, IMEI 352741119567876, located in the evidence locker at the USSS Headquarters, Criminal Investigative Division (CID), Washington, DC (**TARGET DEVICE 4**):

## ATTACHMENT A-5

### Property to be Searched

A Blue Motorola Milan 5G22 XT2215-4, IMEI 351475461223462, located in the evidence locker at the USSS Headquarters, Criminal Investigative Division (CID), Washington, DC **(TARGET DEVICE 5)**.

5

## ATTACHMENT B

1.      All items, information and data to be seized pursuant to this warrant consist of records and other information that relate to or constitute fruits, evidence, and instrumentalities of violations of federal law, specifically 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering), the **TARGET OFFENSE**. All records on the **TARGET DEVICES** described in Attachment A-1 through A-5 that relate to violations of the **TARGET OFFENSE** between February 1, 2022, and June 3, 2025, including:

> a.  Identification documents included, but not limited to, driver's licenses, passports, social security cards, credit reports, pay stubs, bills, invoices, lease agreements, bills of lading, payment records and tax documents, bank and other financial documents, contracts and other apparent fraudulent items whether or not such documents appear to be legitimate or fraudulent;
>
> b.  lists of customers and related identifying information;
>
> c.  Records related to any business or LLC, financial accounts including cryptocurrency account information and documentation to include tax statements and returns.
>
> d.  Texts, chats, photographs, videos and audio recording, depictions or other evidence related to money laundering, check and bank fraud or other identification theft or information related to personally identifiable information (PII);
>
> e.  any information recording the Defendant's schedule or travel from April 2022 to the present;

f.  all bank records, checks, credit card bills, account information, and other financial records.

g.  Call logs, contacts, connections to other devices or connections to Wi-Fi hubs or devices.

h.  Records and information relating to the identity of co-conspirators, criminal associates or others involved in the **TARGET OFFENSE.**

i.  Records and information about any other phone numbers and means of communication associated with the owner or user of **TARGET DEVICES;**

j.  Records or information about Internet Protocol addresses used by the **TARGET DEVICES** related to the **TARGET OFFENSE;**

k.  Records of or information about the Internet activity of the **TARGET DEVICES** relevant to the **TARGET OFFENSE,** including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

l.  Information, notes, software, documents, records, or correspondence, if any format and medium, pertaining to the **TARGET OFFENSE;**

m.  Records and information relating to banking, cryptocurrency and/or other financial transactions and accounts, in connection with the **TARGET OFFENSE** including, but not limited to, records concerning the establishment, possession, access and control of the accounts or virtual wallets, wire transfers, cryptocurrency transfers, cashier's checks, personal checks, money orders, use of

2

cash and other monetary instruments, deposits and other credits, debits and other withdrawals.

2.    Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.    With respect to the search of the information authorized by this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications or other electronically-stored information that are identified with particularity in the warrant, while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

5.    In conducting this review, law enforcement personnel may use various techniques to locate information responsive to this warrant, including, for example:

a. Surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

b. Opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

3

c. Scanning storage areas to discover and possibly recover deliberately hidden files, or files recently deleted before the TARGET DEVICES were originally seized;

d. Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

e. Reviewing metadata, system information, configuration files, registry data and any other information reflecting how, when and by whom the TARGET DEVICES were used.

6.    This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits and instrumentalities described in the warrant. The review of electronic data may be conducted by any governmental personnel assisting in the investigation, which may include, in addition to sworn law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the USSS may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

7.    If the government identifies any seized communications that may implicate the attorney client privilege, law enforcement personnel will discontinue their review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated, absent further order of the Court. The investigative team may continue to review any information that is not so segregated as potentially privileged.

4